# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER PUGH (05),

    Defendant.

Case No. 15-40018-05-DDC

## MEMORANDUM AND ORDER

Before the court is pro se prisoner Christopher Pugh's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 248).[1] Mr. Pugh contends his counsel, Kathleen A. Ambrosio, provided ineffective assistance counsel in two ways. First, after sentencing, Mr. Pugh asserts he sent Ms. Ambrosio a letter asking her to file a notice of appeal, and Ms. Ambrosio failed to file the notice. Second, Mr. Pugh claims Ms. Ambrosio failed to challenge two sentencing enhancements recommended in the Amended Presentence Investigation Report and imposed by the court. Mr. Pugh requests the court vacate its judgment and reimpose his sentence without the guideline enhancements so he can perfect a direct appeal. And, if necessary, Mr. Pugh asks that the court appoint him counsel and hold an evidentiary hearing.

For reasons explained below, Mr. Pugh's motion is deferred in part and denied in part. The court defers ruling on Mr. Pugh's first claim, pending an evidentiary hearing. And, the court

---

[1] Because Mr. Pugh proceeds pro se, the court construes his filings liberally. *United States v. Walters*, 492 F. App'x 900, 903 (10th Cir. 2012) (citing *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007)).

denies Mr. Pugh's second claim, concluding that he has failed to carry his burden to show Ms. Ambrosio acted deficiently under *Strickland v. Washington*, 466 U.S. 668 (1984).

I.  **Facts**

The facts of Mr. Pugh's case are extensive, and so, the court only recites the facts relevant to Mr. Pugh's current motion. On February 10, 2016, the government charged Mr. Pugh—along with defendants Mr. Anderson, Ms. Middleton, Mr. Woody, and Ms. Woody— with one count of kidnapping resulting in death under 18 U.S.C. § 1201(a)(2) and 2. Doc. 64 (Superseding Indt. at 1–3). On November 16, 2016, Mr. Pugh entered a Plea Agreement. Doc. 131. Under the Plea Agreement, Mr. Pugh entered a guilty plea to a Superseding Information (Doc. 127), charging him with one count of kidnapping under 18 U.S.C. § 1201(a)(2). Doc. 131 at 1. The Plea Agreement included a factual basis for the kidnapping (Doc. 131 at 2–3), which the parties stipulated to and Mr. Pugh affirmed during his extensive plea colloquy. Doc. 177 at 32–44.

Before sentencing, the Probation Office prepared an Amended Presentence Investigation Report ("Amended PSR").[2] Under U.S.S.G. § 2A4.1(a), the Amended PSR set Mr. Pugh's base offense level at 32. Doc. 210 at 20. And, the Amended PSR recommended, as Specific Offense Characteristics, a pair of two-point enhancements: one for the victim's serious bodily injury, the other for using a dangerous weapon during the kidnapping. *Id.* (citing U.S.S.G. § 2A4.1(b)(2)(B), (b)(3)). Last, the Amended PSR reduced the adjusted base level of 36 to 33 to account for Mr. Pugh's acceptance of responsibility. *Id.* (citing U.S.S.G. § 3E1.1). This offense

---

[2]  The original PSR calculated a base offense level of 43 based on a cross-reference to U.S.S.G. § 2A1.1. The government conceded this was an error. And, after argument and objections by the parties, the Probation Office drafted an Amended PSR.

level—combined with Mr. Pugh's criminal history category—produced a guideline range of 135–168 months.

At sentencing, the court adopted the Amended PSR, including the two sentencing enhancements. Doc. 237 at 1. The court sentenced Mr. Pugh to 120 months, imposing a below-guidelines sentence on the government's motion under U.S.S.G. § 5K1.1. Mr. Pugh then filed his § 2255 motion on June 11, 2018. The court ordered the government to respond, and the government filed a Response on June 29, 2018.

## II. Legal Standard

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Sixth Amendment provides a person charged with a crime the right to the assistance of counsel. U.S. Const. amend. VI. While the Sixth Amendment does not require effective assistance expressly, the Supreme Court has explained that "[i]t relies instead on the legal profession's maintenance of standards sufficient to justify the law's presumption that counsel will fulfill the role in the adversary process that the Amendment envisions." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). So, a habeas claim will lie where the petitioner shows by a preponderance of the evidence that his counsel provided ineffective assistance. See *United States v. Walters*, 492 F. App'x 900, 903 (10th Cir. 2012).

An ineffective-assistance claim requires petitioner to "show both that his counsel's performance 'fell below an objective standard of reasonableness' and that 'the deficient performance prejudiced the defense.'" *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687–88). The court may address the prongs in any order; failure

to satisfy either prong is fatal to petitioner's claim. *Id.* (citing *Strickland*, 466 U.S. at 697) (further citation omitted).

Under the first prong, the defendant must demonstrate counsel's conduct fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The court applies a "strong presumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *Walters*, 492 F. App'x at 903 (quoting *Strickland*, 466 U.S. at 689). "Strategic or tactical decisions on the part of counsel are presumed correct unless they were 'completely unreasonable, not merely wrong so that [they] bear no relationship to a possible defense strategy.'" *United States v. McDonald*, No. 11-10158-EFM, 2013 WL 3867802, at *3 (D. Kan. July 25, 2013) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (further quotations and citations omitted)).

Under the second prong, prejudice requires a showing of is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

### III. Discussion

Mr. Pugh contends Ms. Ambrosio provided ineffective assistance of counsel in two different ways. First, after his conviction, Mr. Pugh asserts that he sent a letter to Ms. Ambrosio instructing her to file a notice of appeal. According to Mr. Pugh, Ms. Ambrosio failed to do so. Second, Mr. Pugh claims Ms. Ambrosio failed to challenge the two sentencing enhancements recommended in the Amended PSR and imposed by the court. The court addresses each argument, in turn, below.

### A. Failure to File a Notice of Appeal

Mr. Pugh claims that he sent a letter to Ms. Ambrosio, instructing her to file a notice of appeal. According to Mr. Pugh's affidavit, he sent Ms. Ambrosio the letter two days after his sentencing hearing. Mr. Pugh contends Ms. Ambrosio did not file an appeal, nor did she respond to the letter.

In response, the government submitted an affidavit from Ms. Ambrosio. Doc. 250-1 at 1. On October 17, 2017, Ms. Ambrosio's affidavit asserts that she sent a letter to Mr. Pugh at the Jackson County Jail and it reiterated his appeal rights and deadlines.[3] Ms. Ambrosio's affidavit states she did not receive a letter (or any other communication) from Mr. Pugh expressing a desire to appeal. And, Ms. Ambrosio represents she received three letters from Mr. Pugh during her representation, dated as follows: May 20, 2016; an undated letter with an envelope bearing a post mark of August 23, 2016; and September 21, 2016. *Id.*

Mr. Pugh contends Ms. Ambrosio provided ineffective assistance of counsel by failing to file the requested appeal. When counsel disregards a client's request to file an appeal, counsel acts in a manner that is both professionally unreasonable and presumptively prejudicial. *See Bonney v. Wilson*, 754 F.3d 872, 882 (10th Cir. 2014) ("[A] defense attorney who disregards 'specific instructions from the defendant to file a notice of appeal' violates the *Strickland* standard." (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000))); *see also United States v. Roe*, No. 19-600, 2019 WL 350085, at *11 n.19 (10th Cir. Jan. 29, 2019) ("In such situations, prejudice is presumed because counsel's unreasonable performance leads to the denial of an entire judicial proceeding." (citing *Flores-Ortega*, 528 U.S. at 483)). When instructions to

---

[3] Ms. Ambrosio attached a copy of her October 17, 2017, letter to her affidavit, which the government included in its Response. Doc. 250-1 at 2.

5

appeal are disregarded, "a defendant is entitled to a belated appeal without showing the appeal to have merit." *United States v. Parker*, 720 F.3d 781, 786 (10th Cir. 2013) (citations omitted).

The government concedes that—when client and counsel submit conflicting affidavits on this issue—the court should hold an evidentiary hearing. *See United States v. Palermo*, 175 F. App'x 244, 245–46 (10th Cir. 2006) (vacating and remanding district court order denying petitioner's § 2255 motion when petitioner and attorney filed conflicting affidavits and district court applied *Roe v. Flores-Ortega* factors rather than holding an evidentiary hearing); *United States v. Smith*, No. 12-20066-32-KHV, 2016 WL 2958454, at *5 (D. Kan. May 23, 2016). The court thus will hold an evidentiary hearing on this issue. And, because Mr. Pugh previously qualified for appointed counsel under 18 U.S.C. § 3006A, the court appoints new counsel to represent defendant at the evidentiary hearing. *Smith*, 2016 WL 2958454, at *5 (citing Rule 8(c) of the Rules Governing Section 2255 Proceedings); Doc. 88 at 1.

The court also directs counsel for the government to secure Mr. Pugh's appearance. *See id.*

### B.     Failure to Object to Sentencing Enhancements

Next, Mr. Pugh contends that Ms. Ambrosio failed to challenge two sentencing enhancements. In his affidavit, Mr. Pugh states he did not possess a weapon, nor did he see anyone else possess or brandish a weapon in relation to the crime. Doc. 248-1 at 12. And, Mr. Pugh states he did not inflict any harm on anyone, nor did he witness anyone inflict any harm in relation to the crime. *Id.* According to his motion, Mr. Pugh told Ms. Ambrosio to object to the Amended PSR's assertion that he possessed a dangerous weapon and that he had inflicted bodily harm. Mr. Pugh contends that Ms. Ambrosio told him she would object, but she did not. In

6

response, the government argues Ms. Ambrosio was not deficient for failing to object because Mr. Pugh's Plea Agreement admits to facts supporting both enhancements.

The court finds the deficiency prong of the *Strickland* test dispositive to Mr. Pugh's claim and denies his claim on this ground. "Failure to object to the legally erroneous imposition of an enhancement under the Sentencing Guidelines constitutes ineffective assistance." *United States v. Sims*, 218 F. App'x 751, 753 (10th Cir. 2007) (citing *Jansen v. United States*, 369 F.3d 237, 244 (3d Cir. 2004)). So, to establish his counsel was deficient, Mr. Pugh must show how the enhancements were applied improperly. *Walters*, 492 F. App'x at 904 ("Because [defendant] cannot show that these enhancements do not apply to him, he cannot establish that his counsel was deficient for failing to object to their application."); *Fryar v. Peterson*, 259 F. App'x 83, 84 (10th Cir. 2007) (finding defendant could not raise deficient representation based on counsel's failure to object to sentencing enhancement because defendant's admissions at trial made it clear that the enhancement was proper under state law); *United States v. Turley*, 37 F. Supp. 2d 1262, 1265 (D. Kan. 1998) ("Because the sentence enhancement was appropriate, the court concludes that defendant's counsel's failure to object did not fall outside the wide range of professionally competent assistance."); *United States v. Ailsworth*, 206 F. Supp. 2d 1148, 1154 (D. Kan. 2002) ("As for any possible argument that trial counsel was ineffective for not objecting to [the leader] enhancement, there is no reasonable probability that such an objection would have been sustained. The cooperating co-defendants consistently testified to the leader and organizer role played by [defendant]. There is no merit to this issue.").

Construing Mr. Pugh's filing liberally, the court understands Mr. Pugh's brief to argue that Ms. Ambrosio should have objected to both enhancements because other defendants, and not Mr. Pugh, beat the kidnapping victim and otherwise used a firearm during the kidnapping. *See*

7

Doc. 248-1 at 7 (alleging Mr. Pugh is "factually and actually innocent of causing bodily harm to anyone" and "factually and actually innocent of possessing any weapon involved in the offense"). The court holds Mr. Pugh has not carried his burden to show that the court applied the enhancements improperly.

*First*, Mr. Pugh himself need not have caused the serious bodily injury nor otherwise used a dangerous weapon because the court may hold Mr. Pugh responsible for the actions of his co-defendants for acts that fall within the scope of the jointly undertaken criminal activity; that are in furtherance of that activity; and that are reasonably foreseeable in connection with that activity. U.S.S.G. §1B1.3(a)(1)(B); *United States v. Johnson*, 971 F.2d 562, 575 (10th Cir. 1992) ("Section 1B1.3 contemplates that conduct of others acting in concert with the defendant will be factored into the defendant's sentence[.] . . . Thus, the fact that the conduct of an individual other than appellant was used in part to increase appellant's sentence is not inconsistent with the guidelines.").

Here, the scope of the jointly undertaken criminal activity focused on kidnapping A.C., the victim, and making her work off a debt through acts of prostitution. Doc. 131 at 2–3. Mr. Pugh actively participated in this kidnapping. He blocked the door while his co-defendant, Marryssa Middleton, beat A.C. *Id.* at 2. And, Mr. Pugh was present when co-defendant Larry Anderson brandished a firearm and directed A.C. into defendant Woody's vehicle. *Id.* at 3. Anderson and Middleton's actions—beating A.C. and using a pistol to direct her into a car— easily fall within the scope of the kidnapping. Defendants' actions furthered the criminal activity. The court finds they were reasonably foreseeable in connection with the kidnapping— the scope of the criminal activity was to forcibly remove A.C. from the hotel room and force her to work off debts through prostitution. The court thus concludes that the facts Mr. Pugh

8

stipulated to in his Plea Agreement establish the enhancements were applied appropriately and Ms. Ambrosio did not act deficiently when she did not object to the enhancements.

*Second*, Mr. Pugh argues he was not present when any harm was inflicted on the victim. Doc. 248-1 at 7. The court finds this argument meritless, as Mr. Pugh stipulated in his Plea Agreement that he blocked the doorway of the hotel room while defendant Middleton beat A.C. Doc. 131 at 2. Mr. Pugh explicitly affirmed this fact at his Change of Plea Hearing:

> THE COURT: All right. And when A.C. opened that door, did Mr. Anderson and Ms. Middleton rush inside to the room?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you block the doorway to keep anyone from leaving that hotel room?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did Ms. Middleton begin beating A.C. in that hotel room?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you see Mr. Anderson hold or brandish a weapon?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Was it a gun?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: During this beating of A.C., did Ms. Middleton demand that A.C. give her $300?
>
> THE DEFENDANT: Yes, sir.

Doc. 177 at 37–38. The court thus holds that Ms. Ambrosio did not provide deficient assistance by failing to object on these grounds. Mr. Pugh stipulated to these facts in his Plea Agreement and again in his plea colloquy. Doc. 131 at 2–3; Doc. 177 at 32–44. The Amended PSR included these factual findings and the two sentencing enhancements. At sentencing, Mr. Pugh represented to the court that he had reviewed the Amended PSR. Mr. Pugh told the court that he had spoken with Ms. Ambrosio about the Amended PSR and that she had answered all his questions. The court asked Mr. Pugh if he had any reason not to go forward with sentencing, and Mr. Pugh said there was not. And, at sentencing, the court expressly adopted the facts found in the Amended PSR, and affirmed the accuracy of previously stated findings. The court thus concludes Ms. Ambrosio did not provide ineffective assistance by failing to object on Mr. Pugh's "factual and actual innocence" argument because Mr. Pugh has not established the guidelines did not apply to him.

IV.     **Conclusion**

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Pugh's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence (Doc. 248) is deferred in part and denied in part. The court denies defendant's motion except for its claim that counsel provided ineffective assistance because she did not file an appeal after Mr. Pugh requested her to do so.

**IT IS FURTHER ORDERED THAT** the court will conduct an evidentiary hearing on Mr. Pugh's remaining claim on a date promptly following his transport back to this judicial district. The court appoints counsel to represent Mr. Pugh at that hearing and on the remaining aspect of his motion. Counsel for the government is directed to contact the Bureau of Prisons and the United States Marshal Service to coordinate Mr. Pugh's return to this district for the hearing ordered on this motion. The counsel who is appointed to represent Mr. Pugh is directed

to contact Deputy Clerk Megan Garrett at (913) 907-1420 to schedule the hearing called for by this Order.

**IT IS SO ORDERED.**

**Dated this 25th day of February, 2019, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**