IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>CHRISTOPHER PUGH (05),<br><br>      Defendant. | Case No. 15-40018-05-DDC |

### MEMORANDUM AND ORDER

This matter comes before the court on Christopher Pugh's Motion to Reduce Sentence (Doc. 292). Mr. Pugh seeks a sentence reduction to time served because of the COVID-19 pandemic. *Id.* at 1. The government filed a Response (Doc. 295) and Mr. Pugh has not filed a Reply. For reasons explained below, the court dismisses Mr. Pugh's motion.

### I.     Background

In February 2016, a grand jury returned a Superseding Indictment charging Mr. Pugh with one count of kidnapping resulting in death. Doc. 64 at 1–2. If proved beyond a reasonable doubt, these charges would violate 18 U.S.C. § 1201(a)(2). *Id.* Mr. Pugh pled guilty to the charge of kidnapping on November 16, 2016. Doc. 131. The Amended Presentence Investigation Report ("PSR") calculated a total offense level of 33 and a criminal history category of I, producing a Guidelines sentencing range of 135 months to 168 months. Doc. 210 at 20–22, 25. In November 2017, the court sentenced Mr. Pugh to 120 months imprisonment followed by three years supervised release. Doc. 236.

Mr. Pugh asserts that he is currently imprisoned at FCI Oakdale in Louisiana. Doc. 292 at 2. And, according to the Federal Bureau of Prisons ("BOP"), Mr. Pugh is located at FCI

Oakdale I.  Christopher Pugh, Register No. 19531-035, https://www.bop.gov/inmateloc/ (last visited Nov. 23, 2020).  Mr. Pugh is 36 years old.  *Id.*  He asserts a number of health conditions and factors which increase Mr. Pugh's health risks if he contracts COVID-19, including:  (1) hypertension, (2) race, and (3) a previous COVID-19 infection.  *See* Doc. 292.  Mr. Pugh also asserts he is set to be released from BOP custody in four years.  *Id.* at 24.

## II.     Legal Standard

A "'district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"  *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996)).  "'Unless the basis for resentencing falls within one of the specific categories authorized by section 3582(c), the district court lack[s] jurisdiction to consider [the defendant's] request.'"  *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. Mar. 26, 2020) (quoting *United States v. Brown*, 556 F.3d 1108, 1113 (10th Cir. 2009)).  The First Step Act permits an inmate to move the court to reduce his sentence under 18 U.S.C. § 3582(c).[1]  But the defendant may file such a motion only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii)

---

[1]     *See* First Step Act of 2018, Pub. L. No. 115-391, § A 603(b)(1), 132 Stat. 5194, 5239 (2018).

2

"such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).

### III.  Discussion

#### a.  Exhaustion

The parties agree that Mr. Pugh exhausted his BOP remedies before filing his motion in federal court on August 20, 2020. *See* Doc. 292 at 15–16; Doc. 295 at 7.  Mr. Pugh sent a letter to the warden of FCI Oakdale on July 9, 2020 and had not received a response by August 20, 2020—more than 30 days after his request.  Doc. 292 at 16.  Satisfied that Mr. Pugh has met the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A), the court now turns to the substance of his motion.

#### b.  Extraordinary and Compelling Circumstances

Mr. Pugh seeks to modify his sentence under 18 U.S.C. § 3582(c)(1)(A).  Doc. 292 at 1. That statute authorizes district courts to reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable,"[2] the court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]"  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission's applicable policy statement provides that the court may reduce a term of imprisonment, after considering the § 3553(a) factors, if (1) "extraordinary and compelling reasons warrant the reduction,"[3] (2) "the defendant is not a danger

---

[2]  The court considers the 18 U.S.C. § 3553(a) factors in the next subsection.

[3]  Application Note 1 to § 1B1.13 provides that "extraordinary and compelling reasons exist under any of the [four] circumstances set forth below" in (A) through (D).  *Id.* § 1B1.13 application note 1. Subdivision (A) of Note 1 provides that the medical condition of a prisoner may qualify him for compassionate release, if (i) he is suffering from a terminal illness, or (ii) he is suffering from a serious physical or medical condition that "substantially diminishes" his ability to provide self-care within the prison and he is not expected to recover.  *Id.* § 1B1.13 application note 1(A).  Subdivisions (B) and (C)

to the safety of any other person or the community," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

Mr. Pugh contends his health conditions and his race "put him at increased danger of suffering a severe illness related to COVID-19" and Mr. Pugh "has already gone through one bout of COVID-19." Doc. 292 at 2. Mr. Pugh argues these conditions coupled with the risk of COVID-19 at FCI Oakdale constitute extraordinary and compelling circumstances. *Id.* at 2–14. Additionally, Mr. Pugh argues the BOP facility "violated its own standards for treatment of hypertension by not performing more frequent testing" even after Mr. Pugh showed high blood pressure. *Id.* at 3. The government agrees that Mr. Pugh's "hypertension does establish an extraordinary and compelling reason to allow for consideration of compassionate release under Section 3582(c)(1)(A) per DOJ policy and CDC guidance." Doc. 295 at 13. Indeed, the CDC lists hypertension as a condition which might increase the risk of severe illness from COVID-19. *See* Centers for Disease Control, *Coronavirus Disease 2019 (COVID-19); People with Certain Medical Conditions*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Nov. 2, 2020).

To be sure, it is regrettable that Mr. Pugh is incarcerated during this pandemic. It is also regrettable that he suffers from hypertension and suffered through COVID-19. But the court isn't convinced that these conditions qualify him for release. The court reaches this conclusion "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable"—the rubric § 3582(c)(1)(A) instructs the court to follow. Four of those statutory sentencing factors are particularly germane here. The next subsection discusses them.

---

apply to age and family circumstances not invoked here. Subdivision (D) supplies a catchall provision: it applies when as determined by the "Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 application note 1(D).

### c. Sentencing Factors Under § 3553(a)

"Even if the court finds extraordinary and compelling reasons under section 3582(c), the court must still engage in a balancing of the factors listed in section 3553(a) to determine an appropriate sentence." *United States v. Davis*, No. 03-10157-1-JTM, 2020 WL 3037249, at *4 (D. Kan. June 5, 2020), *reconsideration denied*, 2020 WL 3271637 (D. Kan. June 17, 2020). Section 3553(a)'s four factors relevant here include: (1) "the nature and circumstances of the offense[;]" (2) "history and characteristics of the defendant;" (3) "the need for the sentence imposed[;]" and (4) "the kinds of sentence and sentencing range established" for the offense. When the difference between the original sentence and the sentence proposed by a motion under § 3582(c)(1)(A)(i) presents a gap too large, the § 3553(a) factors are unlikely to support the requested sentence reduction, even where a defendant faces extraordinary and compelling circumstances. *See United States v. Pope*, No. 16-10039-JTM, 2020 WL 5704270, at *1 (D. Kan. Sept. 24, 2020) ("This court has concluded that compassionate release based on COVID-19 related concerns should be denied where the resulting sentence would materially depart from an appropriate § 3553(a) sentence, and this conclusion applies especially where the underlying offenses involve actual violence, or the inherent violence associated with felony firearms offenses." (citations omitted)); *United States v. Kaufman*, No. 04-40141-1-JTM, 2020 WL 4196467, at *2 (D. Kan. July 21, 2020) ("Even when an older inmate faces some serious medical condition, compassionate release should be denied if it would radically alter the appropriate § 3553 sentence." (citations omitted)). As demonstrated below, the extraordinary and compelling circumstances presented by Mr. Pugh don't merit a sentence reduction here because, on balance, the germane § 3553 factors do not weigh in favor of a reduction.[4]

---

[4] Some of the facts discussed in part i.–iv. below come from the PSR. Mr. Pugh did not object to any aspect of the PSR relied on in this Order. Doc. 210 at 29 (PSR ¶ 155).

### i. *Nature and Circumstances of the Offense*

On February 7, 2014, Marryssa Middleton and Larry Anderson concocted a plan to inflict a physical beating on A.C., a prostitute, after A.C. made social media posts about her sexual relations with Mr. Anderson. Doc. 210 at 5–6. Ms. Middleton and Mr. Anderson called Mr. Pugh, a friend, asking to use his vehicle. *Id.* at 6. Mr. Pugh refused but he did agree to meet Ms. Middleton and Mr. Anderson at Shantrell and Drexel Woody's home at the Fort Riley Military Installation. *Id.* Once Mr. Pugh arrived, he learned Ms. Middleton and Mr. Anderson were angry with A.C. over social media posts. *Id.* Mr. Pugh went with Mr. Anderson, Ms. Middleton, and Mr. Woody to Junction City where Mr. Woody was going to pretend to be one of A.C.'s customers. *Id.* While Mr. Woody and A.C. were in a hotel room, A.C. heard a knock at the door and opened it to Ms. Middleton, Mr. Anderson, and Mr. Pugh, who all rushed into the hotel room. *Id.* Ms. Middleton almost immediately started beating A.C. *Id.* Mr. Anderson brandished a weapon during this encounter. *Id.*

During the beating, Ms. Middleton and/or Mr. Anderson demanded $300 from A.C. *Id.* A.C. told the defendants she could get the money from her hotel, the Red Roof Inn, in Grandview Plaza, Kansas. *Id.* The defendants, including Mr. Pugh, walked A.C. to their car and transported A.C. to the Red Roof Inn. *Id.* Once they arrived at the Red Roof Inn, defendants asked where the money was located but didn't recover the sum. *Id.* Ms. Middleton and Mr. Anderson brandished weapons during this encounter. *Id.*

After this encounter, Ms. Middleton, Mr. Anderson, Mr. Woody, and Mr. Pugh forced A.C. into their vehicle and transported her to a vacant parking lot before driving A.C. to the Woody's home. *Id.* at 7. Mr. Woody drove Mr. Pugh home while Ms. Middleton and Mr.

Anderson told A.C. she was to arrange an encounter with a paying customer to "work off" her $300 debt. *Id.* Later, Mr. Pugh returned to the Woody home. *Id.*

At some point, Mr. Anderson pointed a gun at A.C.'s head and heard Ms. Middleton threaten to kill A.C. if A.C. did not get the $300 by midnight. *Id.* A.C. asked to call her young son and spoke with her mother on the phone around 11:30 p.m. on February 7, 2014. *Id.* After this phone call, the police called A.C.'s phone. *Id.* After hearing the police, Ms. Middleton and Mr. Anderson hung up A.C.'s phone, turned it off, and broke it believing the police had discovered them. *Id.* at 8. Ms. Middleton began to hit A.C. *Id.* At this point, Mr. Pugh left the Woody residence again. *Id.*

Ms. Middleton, Mr. Anderson, and Mr. Woody carried out Ms. Middleton's threat. *Id.* They drove A.C. from Fort Riley to a bridge in Geary County, Kansas. *Id.* There, Ms. Middleton and Mr. Anderson beat and stabbed A.C. *Id.* Ultimately, A.C. died from Ms. Middleton and Mr. Anderson's knife-inflicted wounds. *Id.*

To conclude, Mr. Pugh assisted with a serious felony kidnapping offense that resulted in a death. The nature and circumstances of this offense do not favor Mr. Pugh's motion.

    ii.  *History and Characteristics of the Defendant*

Before this offense, Mr. Pugh had minimal criminal history. Doc. 210 at 21–22. He had three traffic-related offenses. *Id.* at 21. In 2010, Mr. Pugh was sentenced to 30 days in jail and placed on unsupervised probation for improper lane usage, open container of alcohol, and driving under a suspended license in Monroe, Louisiana. *Id.* In 2012, Mr. Pugh was convicted of not having his driver's license in his possession and failing to appear. *Id.* Finally, Mr. Pugh was convicted for not wearing a seatbelt. *Id.*

This factor favors Mr. Pugh's motion because of his minimal criminal history and his health conditions placing him at an increased risk of severe illness from COVID-19, as discussed above.

### iii. The Need for the Sentence to Reflect Offense's Seriousness, to Provide Just Punishment, and to Afford Adequate Deterrence to Criminal Conduct

When the court sentenced Mr. Pugh, it adhered to the statutory mandate that it impose a sentence that was "not greater than necessary." Mr. Pugh received a significant but, in context, appropriate sentence. The guidelines sentencing range was 135 months to 168 months imprisonment with two to five years supervised release. Doc. 210 at 25. The court departed from the guideline imprisonment range and sentenced Mr. Pugh to 120 months and 3 years supervised release. Doc. 236.

Mr. Pugh's earliest possible release date is September 8, 2024. Doc. 295 at 14 n.9. Mr. Pugh has served slightly over 50% of his sentence. Doc. 292-2 at 2. Reducing Mr. Pugh's sentence by almost 46 months would produce a sentence that no longer adequately reflects the seriousness of Mr. Pugh's criminal conduct. Likewise, such a reduced sentence no longer would furnish adequate deterrence to criminal conduct or provide just punishment. These factors weigh against Mr. Pugh's motion.

### iv. The Sentencing Range Established for the Applicable Category of Offense Committed by the Applicable Category of Defendant

Reducing Mr. Pugh's sentence to time served would reduce it well below the applicable Guidelines range of 135 months to 168 months. To reduce Mr. Pugh's already reduced sentence of 120 months by 46 months would place it significantly below the guidelines range. No new circumstances justify such a disparity.

### IV.     Conclusion

In sum, the pertinent sentencing factors in 18 U.S.C. § 3553(a) do not favor the reduction Mr. Pugh seeks.  Indeed, the primary extraordinary and compelling circumstance favoring his request is the fact that he regrettably suffers from hypertension.  The court recognizes that this condition—at least in theory—has the potential to increase the severity of the sentence beyond the 120 months already imposed.  *United States v. Mel*, No. CR TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) ("The fact that Mel has been incarcerated . . . during a serious outbreak of COVID-19 inside the facility sufficiently increased the severity of the sentence beyond what was originally anticipated . . . .").  But the circumstances Mr. Pugh presents haven't increased the sentence's severity to the point where reducing Mr. Pugh's sentence approximately 46 months is warranted.  The court thus dismisses Mr. Pugh's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 292).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Pugh's Motion to Reduce Sentence (Doc. 292) is dismissed.

**IT IS SO ORDERED.**

**Dated this 1st day of December, 2020, at Kansas City, Kansas.**

s/ Daniel D. Crabtree
Daniel D. Crabtree
United States District Judge
